**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT PARKERSBURG**

**STEVEN LESTER GATES,**

     **Plaintiff,**

**v.**                            **Civil Action No. 6:12-cv-07860**

**CAROLYN COLVIN,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9) and Brief in Support of Defendant's Decision (ECF No. 11).

Plaintiff, Steven Lester Gates (Claimant), filed an application for DIB on April 15, 2010, alleging disability as of April 25, 2008, due to multiple medical conditions (ECF No. 126-127).  Claimant listed a broken back injury, bad shoulders, arthritis, nerve damage in lower back, hypertension and diabetes as his disabling medical conditions (ECF No. 170). The claim was initially denied on July 6, 2010, and upon reconsideration

1

on October 27, 2010.   Claimant filed a written request for a hearing before an Administrative Law Judge (ALJ).  On December 2, 2011, an administrative hearing was conducted in Charleston, WV.  Claimant appeared via video from Parkersburg, WV.  By decision dated December 20, 2011, the ALJ held that Claimant had not been under a disability from the alleged onset date of April 25, 2008, through the date of the decision.

On January 6, 2012, Claimant sought review by the Appeals Council.  Claimant requested a 45 day extension of time to provide additional evidence (Tr. at 14).  By letter dated March 7, 2012, the Appeals Council notified Claimant that an extension of 25 days was allowed for the submission of evidence that must be new and material to the issues considered in the hearing decision dated December 20, 2011 (Tr. at 7).  The Appeals Council received Claimant's Brief dated March 26, 2012, and made it part of the record as Exhibit 19E (Tr. at 5).   The review was denied by the Appeals Council on September 28, 2012.  Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).  Claimant filed a Brief in Support of Judgment on the Pleadings (ECF No. 9), Defendant filed a Brief in Support of Defendant's Decision (ECF No. 11) and Claimant's Response to Defendant's Brief (ECF No. 12).

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).   A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520, 416.920 (2012).  If an individual

is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983) and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 21). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic back pain, history of fracture of the spine, nerve damage

in the lower back, degenerative disc disease, chronic cough, bilateral shoulder impingement and obesity. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 22).  The ALJ then found that Claimant has a residual functional capacity ("RFC") for light work, reduced by nonexertional limitations[1] (Tr. at 23).  As a result, the ALJ held that Claimant can return to his past relevant work as an insurance agent, which is at the light exertional level.  On this basis, benefits were denied (Tr. at 19-29).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether

---

[1] Claimant can lift twenty pounds occasionally and ten pounds frequently and carry twenty pounds occasionally and ten pounds frequently.  He is able to sit for two hours out of an eight-hour workday and stand or walk six hours out of an eight hour workday.  He would be able to sit or stand at will, as long as he is not off task more than 10% of the time.  The claimant may push and pull as much as he can lift or carry.  He is limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, stooping, kneeling, crouching or crawling.  He can never be exposed to hazards, such as unprotected heights and moving machinery and may have only occasional exposure to extreme heat, cold and virbations. (Tr. at 23).

the conclusions reached are rational.  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 21, 1952.  Claimant's height was 6' and he weighed 230 lbs (Tr. at 170).  Claimant completed two years of college (Tr. at 171).  In Claimant's Disability Report, Claimant reported his alleged disability onset date as April 25, 2008, and reported that he stopped working on December 16, 2009 (Tr. at 165-171).  He has work experience as a contract specialist, insurance agent, insurance company regional manager and substitute school bus driver (Tr. at 172).

On Claimant's Social Security Administration Function Report dated April 28, 2010, Claimant reported that he experienced a "tree stand accident in 1994" (Tr. at 191). Claimant reported that his arthritis worsened in 2008.  He asserts that he experienced nerve damage which prevents him from sitting, bending, lifting and driving for periods of time over 45 minutes without constant pain and discomfort.  (*Id.*)

In describing his daily activities, Claimant reported that he cleans up the kitchen, goes golfing or hunting, performs some volunteer work at his church, eats lunch at his daughter's house and watches tv (Tr. at 192). Claimant reported that he has no problem with personal care.  He does not need reminders to take medicine or to take care of personal needs and grooming (Tr. at 193).  Claimant prepares simple meals daily. Claimant reported ironing and doing laundry, however, he asserts he cannot perform

physical outdoor yard work or house repair.[2]  Claimant drives a car, shops for groceries, clothes and everyday items, approximately once or twice a week (Tr. at 194).  Claimant reported that he is able to pay bills, count change, handle a savings account and use a checkbook/money orders.  (*Id.*)  Claimant listed the following places as where he attends on a regular basis: church every Sunday, Evangelism committees, the golf course "to chip and putt and socialize with friends" and he volunteers for his church to visit the hospital (Tr. at 195).  Claimant does not need to be reminded to go places and does not need someone to accompany him.  He attends church every Sunday in addition to when he is needed to serve on church committees.

Claimant reported that he cannot walk long distance, stand for long periods or sit for more than 30 minutes. (*Id.*)  Claimant reported that he cannot lift more than 10-15 lbs.  Claimant asserted that he suffers from back, knee and hip pain (Tr. at 196).  Claimant stated that he can finish projects he started, follow written instructions fairly well, follow spoken instructions fairly well with limits and walk for approximately ½ mile before needing to stop and rest.  (*Id.*)

Under the Remarks section of the Function Report, Claimant stated that the golf course is one of his escapes (Tr. at 198).  He reported that he can chip and putt well around the green when he does not have to swing hard.  He claims that he cannot turn his shoulders to be competitive any more. (*Id.*)  Claimant reported that he really enjoys hunting, however, he cannot walk more than ½ mile.

Claimant completed a Personal Pain Questionnaire on April 28, 2010 (Tr. at 199-203).  He reported to experience continuous pain.  Claimant receives Cortisone shots in his shoulders (Tr. at 199).  He reported that he takes 2 ibuprofen pills once daily for

---

[2] Claimant reported that his landlord takes care of mowing the grass and house repairs (Tr. at 193).

pain.  He reported to having constant aching, stabbing, stinging, cramping and throbbing pain.

James Binder, M.D., performed a Psychiatric Review of Claimant on May 22, 2010 (Tr. at 293).  Dr. Binder found Claimant to have no medically determinable impairment.  On June 8, 2010, Sushil M. Sethi, M.D., conducted the West Virginia Disability Determination Service Disability Determination Examination (Tr. at 308-318).  Dr. Sethi stated that Claimant thinks the reason he began suffering the pain which resulted in his application for DIB was his diabetes (Tr. at 308).  Claimant was diagnosed with diabetes in 2008.  He treats his diabetes by taking an oral medication.  Upon Physical Examination, Dr. Sethi found the cervical spine to be normal.  Claimant's thoracic spine shows "moderate tenderness at the T10-T11 (Tr. at 309).  Neurologically, Claimant's motor and sensory nerves were found to be normal.  (*Id.*)  The x-rays of Claimant's lumbar spine showed no obvious fracture or dislocation.  The x-rays showed large spur formation anteriorly at the L3-L4.  Dr. Sethi's Medical Source Statement reported that "The claimant's ability to work at physical activity is moderately limited.  Hearing, speaking, and traveling are normal" (Tr. at 310).[3]

On July 6, 2010, Miranda M. Miller completed a vocational analysis of Claimant (Tr. at 204).  The vocational analysis found Claimant's physical assessment exertion level to be medium and there were no restrictions under the mental assessment.  Claimant has a prior work history as an insurance agent, which is skilled work performed at the light exertional level.  (*Id.*)  On October 27, 2010, Jim King reviewed and affirmed Claimant's prior vocational analysis (Tr. at 225).

---

[3] Holly Cloonan, Ph.D., reviewed all the evidence in the file and the Psychiatric Review performed by Dr. Binder on May 22, 2010.  Dr. Cloonan affirmed the Psychiatric Review as written (Tr. at 332).

A Field Office Disability Report was conducted on August 11, 2010 (Tr. at 207-214). Claimant reported that he was diagnosed on July 1, 2010, to have a torn rotator cuff, bursitis, tendinitis and bone spurs in his left shoulder. Claimant receives cortisone shots in his left shoulder for pain by Dr. Jason Barton (Tr. at 210).

On July 1, 2010, Gary W. Miller, M.D., with First Settlement Orthopedics, Inc., reviewed an MRI of Claimant's left shoulder and found no evidence of fracture-dislocation (Tr. at 322). There was some subchondral cystic formation along the lateral margin of the humerus. There was a small tear but the remainder of the rotator cuff was intact. Dr. Miller's impression was that some mild degenerative change was seen including some subchondral cystic formation at the lateral margin of the humeral head and degenerative change at the AC joint. Dr. Miller noted the patient likely has a degree of tendonitis and a small partial tear of the distal insertion of the supraspinsatus. (*Id.*) Dr. Miller's July 14, 2010, office visit notes reported that Claimant's "MRI [of his shoulder] does show a small tear at the intersection of the supraspinatus tendon, mild subdeltoid bursitis" (Tr. at 319). Dr. Miller reported Claimant's present illness presents tendonitis in the area of the shoulder and mild arthritic type changes but not significant arthritic type changes. (*Id.*)

On July 6, 2010, Marcel Lambrechts, M.D., performed a Physical Residual Functional Capacity Assessment of Claimant (Tr. at 323- 330). Claimant's primary diagnosis was type 2 diabetes under control. His secondary diagnosis was lower back pain with a history of a fracture in 1994 (Tr. at 323). Dr. Lambrechts' exertional limitations found that he could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit with normal breaks for a total of about 6 hours in an 8-hour workday and push and/or

8

pull without limit (Tr. at 324).  Dr. Lambrechts found Claimant to be only partially credible and to be able to work at physical activity to be moderately limited (Tr. at 328-329).

On August 23, 2010, Claimant completed a Social Security Administration Functional Report (Tr. at 215-224).  Claimant reported that his daily activities include making eggs, coffee and toast in the mornings.  He "sometime[s] go to the golf course and try to play 9 holes with friends, depending on how my back and hips are feeling" (Tr. at 216).  Claimant reported that he "cannot hit a golf ball very far anymore.  [He] was once a 6 handicap."  Claimant spends time reading, watching television, grocery and clothes shopping and helping with things at his church.  (*Id.*)  He prepares food daily, irons his shirts, vacuums and help with laundry and dishes.  Claimant reported that he can only work for periods of time lasting 10 to 15 minutes. (Tr. at 217).  Claimant reports that he cannot do yard work. Claimant can drive a car and goes outside daily (Tr. at 218).  Claimant is able to pay bills, count change, handle a savings account and use a checkbook.

Claimant listed his hobbies and interests on the Functional Report to include watching tv, reading the Bible and spending time on the golf course with his friends.  Claimant reported that he can sit and ride in a golf cart because he cannot walk the golf course.  Claimant stated that he cannot swing a golf club hard because of his back and hips.  Claimant reported that he no longer has good balance (Tr. at 219).

Claimant listed his social activities that he does with other people to include going to church, golfing, talking on the phone with friends and family and checking his email.  Claimant listed church, high school wrestling and golf as places he goes on a regular basis.  (*Id.*)   Claimant sometimes needs to be reminded to go places but he does

9

not need someone to accompany him.   Claimant lists the changes in social activities since his medical condition began as inability to lift or sit for long periods of time, inability to sit for long periods of time and running (Tr. at 220).

On the Function Report, Claimant reported that he can walk approximately half a mile before needing to stop and rest.  He can usually follow instructions "pretty well," he "just can't follow anything that puts physical demands on [him]."  (*Id.*)   Claimant stated that he gets along with authority figures "just fine" (Tr. at 221).  Claimant has been fired or laid off from a previous job with the Bureau of Public Debt.[4]  (Id.)  Claimant attached a memo to his Functional Report.  In the memo, Claimant stated that he injured his back on December 3, 1994,[5] after falling out of a tree during deer hunting.  Claimant underwent two surgeries, one on December 3, 1994, for decompression of an L1 fracture and the second on January 18, 1995, for posterior fusion for an L1 burst fracture (Tr. at 258).   Claimant reports that he endured 77 days of hospitalization (Tr. at 223). Claimant was discharged to go home on February 17, 1995 (Tr. at 260).  Claimant asserts that he began to suffer from nerve damage in his back hips and legs approximately in August 2007.  (See, *Id.*)

On October 27, 2010, Uma Reddy, M.D., performed a Physical Residual Functional Capacity Assessment of Claimant (Tr. at 334-341).  Claimant's primary diagnosis was back injury and arthritis.  His secondary diagnosis was hypertension and DM (Tr. at 334).  Dr. Reddy's exertional limitations found that he could occasionally lift/ and or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit with normal breaks for a total of about 6 hours

---

[4] On Claimant's Work History Report for the Social Security Administration, Claimant listed working at the Bureau for Public Debt from August 17, 2007 to April 23, 2008 (Tr. at 181).
[5] Claimant's application for DIB reports his disability onset date as April 25, 2008, and that his last day of work was December 16, 2009.

in an 8-hour workday and push and/or pull without limit (Tr. at 335).  Dr. Reddy lists Claimant's symptoms as a "58 years old obese built male with allegations of back strain and pain due to arthritis, not well established.  Claims to take some pain meds.  No neurological issues, but his over weight is contributing for his physical activity restrictions."  Dr. Reddy reported that "Over all he is partially credible" (Tr. at 339).  Dr. Reddy stated "Onset for this RFC [Residual Functional Capacity] could be set at 6/10, prior to that it's insufficient evidence to evaluate."  (*Id.*)

Claimant was treated by the Mid-Ohio Valley Medical Group, Inc., from May 29, 2007 to February 2, 2011 (Tr. at 343-430).  Claimant had a scheduled appointment with Mid-Ohio Medical Group, Inc., on March 26, 2008 (Tr. at 355-357).  Claimant was there for a regularly scheduled appointment.  Jason A. Barton, DO, noted that Claimant's diabetes had improved, however, Dr. Barton's Assessment Plan noted that Claimant's diabetes was "not well controlled" (Tr. at 355, 357).  Claimant denied chest pain, shortness of breath, headaches, edema, abdominal pain and indigestion.  A Review of Claimant's Systems during the appointment reported that Claimant did not have any thyroid trouble, anemia, weakness, dizziness or loss of consciousness (Tr. at 355).  Claimant did not have any cardiac murmurs or tenderness in the abdomen.  Claimant was instructed to return for an office visit in 3 months (Tr. at 357).

Claimant asserts that his disability onset date was April 25, 2008.  Claimant did not return to Mid-Ohio Valley Medical Group, Inc., until his next regularly scheduled appointment on July 29, 2008 (Tr. at 358 -361).  Dr. Barton reported that Claimant's diabetes remained stable (Tr. at 358).  Claimant denied chest pain, headaches, edema, shortness of breath, abdominal pain, indigestion and nausea.  (*Id.*)  Dr. Barton noted

that Claimant experienced "a recent worsening of lower back pain and has been playing more golf."

Dr. Barton's office visit notes state that Claimant's pain in his shoulder joints onset was on June 10, 2009 (Tr. at 403).  Dr. Barton's assessment and plan included referring Claimant to an orthopedic doctor and to "drain/inject, joint/bursa."  (*Id.*)  On July 28, 2010, Dr. Barton's office notes states that Claimant has persistent low back pain with numbness and pain down both lower extremities.  On September 14, 2010, Dr. Barton's office visit notes state that Claimant reported increased memory loss.  Claimant reported having bilateral shoulder pain with decreased range of motion.  Claimant was treating his shoulder pain with nonsteroidal anti-inflammatories with very little relief.  Claimant uses ice for shoulder pain.  Dr. Barton noted Claimant had seen an orthopedic doctor in the past for his shoulder pain treatment (Tr. at 411).  Dr. Barton's notes listed Claimant's onset date for pain in his joint shoulders as July 12, 2004, and June 10, 2009, as Claimant's onset date for lower back pain.  (*Id.*)

On December 20, 2010, Dr. Barton's office visit notes report that Claimant was still experiencing bilateral shoulder pain and decreased range of motion.  Claimant was found to have bilateral rotator cuff tendonitis and impingement syndrome.  Claimant occasionally receives Cortisone shots.  Claimant has not been checking his sugar for diabetes (Tr. at 418).

On March 28, 2011, Dr. Barton's office visit notes report that Claimant's triglycerides were significantly elevated and his diabetes had been high.  Claimant was not exercising or following any particular diet.  Claimant reported bilateral shoulder pain and decreased range of motion of both shoulders.

On May 16, 2011, Dr. Barton's office visit notes report that Claimant was experiencing discomfort to his bilateral breast region with no known injury. Claimant was experiencing some swelling, tenderness and soreness in both of his breasts (Tr. at 445). Claimant stated that he has arthritis. Claimant complained of joint pain in his shoulders and hips. Claimant reported that he "does golf frequently." (*Id.*) On June 22, 2011, Dr. Barton's office visit notes report that Claimant was experiencing bilateral shoulder pain, neck pain and back pain. Claimant's diabetes was elevated. Dr. Barton reported Claimant "is trying to follow a better diet and be more active by golfing and being more active physically" (Tr. at 441). Claimant reported impotence with an inability to obtain an erection without use of medication. (*Id.*)

Joseph C. Darrow, M.D., with Camden-Clark Orthopedics, began treating Claimant on June 30, 2009 (Tr. at 398). Claimant reported to Dr. Darrow that he had been a life long athlete consisting of softball, baseball and golf. Dr. Drarrow's impression was bilateral anterior impingement syndromes of the shoulders. Dr. Darrow's Plan reported Claimant's "finding are perfectly consistent with either the anterior impingement syndrome or small tear of the rotator cuff. Fortunately the treatment is the same for both." (*Id.*) Dr. Darrow's Plan stated that he would like to start Claimant on ibuprofen 800 mg. Dr. Darrow recommended Claimant start physical therapy and return in 6 weeks for a re-evaluation.

Claimant returned to see Dr. Darrow on August 11, 2009 (Tr. at 397). Claimant reported that he had not gone to physical therapy because he felt he could not financially afford it. Dr. Darrow demonstrated exercises for Claimant to perform at home. Dr. Darrow administered a Cortisone injection into both of Claimant's shoulders.

Dr. Darrow's office visit notes state "Within 3-5 minutes patient noticed both shoulders felt better than prior to injection." (*Id.*)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant argues that the ALJ committed reversible error by according improper weight to the consultative report of Dr. Sethi and failing to recontact the consultative physician for more information.  Claimant asserts that the ALJ erred in finding that Claimant's statements regarding the intensity, persistence and limiting effect of his symptoms were not credible.  Finally, Claimant asserts that the ALJ erred in failing to properly consider the impact of Claimant's bilateral shoulder impingement on his ability to work (ECF No. 9).  The Commissioner argues that substantial evidence supports the Final Decision that Claimant was not disabled under the Social Security Act.  The Commissioner asserts that the ALJ did not err by not recontacting Dr. Sethi regarding his consultative finding and opinion.   Additionally, the Commissioner asserts that substantial evidence supports the ALJ's evaluation of Claimant's subjective complaints and shoulder impingement (ECF No. 11).

<u>Credibility</u>

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence.  "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision."  <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172 (4th Cir. 1986).   The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion.  This duty of explanation is

always an important aspect of the administrative charge . . . ."  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

The ALJ's decision held that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessments performed (Tr. at 24).  The ALJ found that the objective evidence does not support the extreme limitations alleged and reveal the Claimant is not fully credible.

Records primarily from Claimant's treating physician Jason Barton, M.D., demonstrate that Claimant sustained a lumbar fracture after falling from a tree stand while hunting in 1994.  Subsequently, Claimant underwent lumbar surgery for extensive posterior bone grafting and intensive rehabilitation therapy to improve his range of motion and mobility.  At the hearing, Claimant testified that after therapy he resumed working in the insurance business.  Claimant worked in the insurance business for 30 years.  He testified to holding positions of a regional director, recruiter and trainer (Tr. at 42).  Claimant asserts that he had to get up and move from his desk approximately every hour to relieve pain and numbness in his leg and back.

Claimant worked as a contract specialist for the Bureau of Public Debt for eight months (Tr. at 41). Claimant alleged that the job ended on April 25, 2008, because his employer said that he wasn't learning his job fast enough.  (*Id.*)  Claimant asserted that the Bureau of Public Debt complained about his need to get up and move around because he could not sit for long periods time due to his pain. (*Id.*)  Claimant last worked full time on April 25, 2008.

15

After April 25, 2008, Claimant worked an insignificant amount of time as a part time substitute school bus driver (Tr. at 43-44). Claimant testified that driving the bus was too difficult on his arms, therefore, he resigned (Tr. at 44). Claimant has not worked since his three days as a bus driver (Tr. at 45).

Claimant testified that he cannot sit or use a computer for a long period of time without needing to get up and move around (Tr. at 47). Allegedly, after 30 minutes of using his hands and/or arms, Claimant's shoulders begin to hurt. To relieve the pain, Claimant testified that he moves around or sits sedentary. (*Id.*) Claimant testified that sometimes sitting can become uncomfortable so he stands up and walks around for relief (Tr. at 48). However, when asked at the hearing how he spends most of his day, Claimant responded that if he is at home, he is on the computer, watching television or reading. Claimant testified that he feels better when his feet are elevated (Tr. at 49). At the hearing, Claimant was asked why he believes he cannot do a job requiring him to sit at a desk if the job would allow him to get up and down as needed and permit him to change his position to sit or stand, as long as he could continue to work. Claimant testified that his back hurts if he sits or stands too long in one position and that he can't stand due to back pain. Claimant was further asked that if he is sitting and needs to stand to change position, would that relieve his pain? Claimant testified "No" in contradiction to his earlier testimony of experiencing relief when standing after sitting too long (Tr. at 51-52).

Claimant asserts that he consistently sought treatment for his chronic back pain and bilateral shoulder impingement (ECF No. 9). Claimant avers that his testimony at the hearing regarding the severity of his shoulder and back pain and the impact his pain

16

has on his ability to work is supported by medical records that document Claimant's ongoing complaints related to his shoulder impingement.

In describing his daily activities, Claimant reported that he cleans, golfs, hunts, performs volunteer work, watches tv, prepares simple meals daily, drives, shops for groceries, clothes and everyday items, pays bills, counts change, handles a savings account and uses a checkbook (Tr. at 192-195).

On numerous doctors' visits, Claimant reported to golfing frequently.  Claimant reported that golf is a form of escape and release from his pain (Tr. at 198).  In Claimant's Function Report submitted to the Social Security Administration, Claimant attempts to justify his physical activity of golfing by stating that he "used to play to a 6 handicap and was very competitive, but [he] cannot turn his shoulders to be competitive anymore." (*Id.*)

The Court recommends the presiding District Judge find that the ALJ properly weighed Claimant's subjective complaints of pain in keeping with the applicable regulations, case law and social security ruling ("SSR") and that his findings are supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2012); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).  As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations.  *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Claimant asserts the ALJ specifically failed to conduct a proper analysis of whether the condition could reasonably be expected to produce the individual's

symptoms and evaluating the intensity, persistence, or functionally limiting effects of the symptoms. The ALJ explicitly held that the objective evidence of record does not support the Claimant's extreme physical complaints and limitations. Further, the ALJ held that the Claimant is not fully credible. The Disability Determination Examinations, Residual Functional Capacity Evaluations, doctors' reports and treatment notes and Claimant's own testimony support the ALJ's determination. Dr. Sethi's Disability Determination Examination concluded that Claimant's ability to perform physical work activity was only moderately limited (Tr. at 310). Dr. Lambrechts, a state agency medical consultant, reviewed the evidence in the record and determined that Claimant was only partially credible and he was able to work moderately limited physical activity (Tr. at 328-329). Additionally, Dr. Reddy, a state agency medical consultant, performed a Physical Residual Functional Capacity Assessment of Claimant and reported that Claimant was only partially credible (Tr. at 339).

<u>Ability to Perform Past Relevant Work</u>

Claimant asserts that the ALJ failed to find Claimant's bilateral shoulder impingement to constitute a severe impairment. Claimant's treating physician, Dr. Barton, noted on June 10, 2009, that Claimant reported bilateral shoulder pain which results in "trouble with golfing" (Tr. at 370). The ALJ found that Claimant's bilateral shoulder impingement fails to meet section 1.02, major dysfunction of a joint(s), in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 22). Claimant's bilateral impingement failed to meet the 1.02 required characteristics of  gross anatomical deformity and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joint(s) and finding on appropriate medically acceptable imaging of joint space narrowing, bone destruction, or anklyosis of the affected joint(s) with the

involvement of one major peripheral weight bearing joint, resulting in an inability to ambulate effectively, as defined in 1.00(B)(2); or involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively, as defined in 1.00(B)(2)(c) (Tr. at 22-23).

Claimant suffers from a rotator cuff tear, bursitis and bone spurs in his shoulders. Claimant has received routine and conservative treatment for the allegedly disabling pain. However, Claimant continues to play golf, hunt and perform a myriad of daily functions while claiming severe disabling pain in both of his shoulders. Claimant received Cortisone injections for his shoulder complaints from Dr. Darrow.

Dr. Sethi's Disability Determination Examination reported that Claimant's upper extremities show normal range of motion without effusion, redness or deformity. Grasp, pinch manipulation and fine coordination are normal (Tr. at 309). Dr. Sethi found Claimant's ability to work at physical activity to be moderately limited (Tr. at 310). The ALJ found that the opinions of Dr. Sethi, Dr. Lambrechts, Dr. Reedy and Claimant's treating physicians supported a finding that in considering the evidence in a light most favorable to the claimant, including his testimony, Claimant was limited to less than light exertional work (Tr. at 28).

Vocational Expert's Testimony

Vocational Expert Casey Vass testified at the hearing. Mr. Vass testified that Claimant's past relevant work includes work as a contracts specialist, which is skilled work at the sedentary exertional level; as an insurance agent, which is skilled work at the light exertional level including the telephone sales performed in the insurance agent position being at the sedentary exertional level; and as an insurance regional manager, which is skilled work at the sedentary exertional level (Tr. 53-60).

The ALJ asked Mr. Vass if a hypothetical individual of Claimant's age and education with Claimant's past work and limiting this individual to light work with Claimant's reduced nonexertional limitations could perform any of Claimant's previous work positions (Tr. at 56).  Mr. Vass testified that Claimant's past job as an insurance agent would be light, therefore, it would conform to the ALJ's hypothetical.  (*Id.*)  The positions of contracts specialist and insurance regional manager are sedentary, therefore, Mr. Vass did not see a problem with the hypothetical individual working either of those positions.  The ALJ adjusted his hypothetical so that the individual was able to perform sedentary level work and then asked Mr. Vass if this individual could perform any of Claimant's past jobs (Tr. at 56-57).  Mr. Vass testified yes to both.  As a result, the ALJ held that Claimant is capable of performing past relevant work as an insurance agent, contracts specialist and regional sales manager in insurance.  The work required to perform these positions do not require performance of work-related activities precluded by Claimant's residual functional capacity (20 CFR 404.1565) (Tr. at 28).

<u>Sufficient Evidence in the Record to Determine Disability</u>

Claimant asserts that the ALJ is responsible to recontact a consulting physician for clarification when the evidence received from the treating physician or other medical sources is inadequate to determine disability.  In doing so, the Commission will first recontact claimant's treating physician or other medical source to determine whether additional information is available.  The Commission will seek additional evidence or

clarification from the medical source when the report from the medical source contains a conflict or ambiguity that must be resolved.  20 CFR § 404.1512(e).[6]

Claimant argues the ALJ erred in his duty to develop the record by not recontacting the treating physicians or by not ordering a new consultative evaluation. The basis of Claimant's argument is that "Dr. Sethi did not report any specific assessments or corresponding results used to evaluate the alleged shoulder impairment or its potential effects on the claimant's ability to work" (ECF No. 9).  Dr. Sethi's Disability Determination Examination conducted on June 8, 2010, reported "Upper extremeties show normal range of motion without effusion, redness, or deformity. Grasp, pinch manipulation and fine coordination are normal" (Tr. at 309).  Claimant argues this is in direct contrast with the medical record of Dr. Barton, dated June 17, 2010, which reported under Physical Examination findings that Claimant was experiencing "decreased range of motion" in his shoulder (Tr. at 401).

The evidence available to the ALJ at the time of rendering the decision was not inadequate to make a disability determination.  The ALJ took into consideration treatment records from Dr. Barton, Dr. Miller, Dr. Darrow, two state agency medical consultants and the consultative examination report of Dr. Sethi.  The ALJ also considered Plaintiff's testimony and the testimony of the Vocational Expert before making the decision.  There was sufficient evidence in the record for the ALJ to determine whether Claimant was not disabled.

---

[6] 20 CFR § 404.1512(e) was amended effective February 26, 2013, to eliminate this provision from the regulation. 77 Fed. Reg. 10,651, 10,655 (Feb. 23, 2012).  The amendment was affective after the ALJ's decision in the present case and does not enter into the Court's reasoning, but if effective earlier would provide further support for its determination.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:  January 23, 2014.

Dwane L. Tinsley
United States Magistrate Judge