IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

STEVEN LESTER GATES,

        Plaintiff,

v.                                          CIVIL ACTION NO.   6:12-cv-07860

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Steven Lester Gates' Complaint seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") [ECF 1]. By Standing Order entered September 2, 2010, and filed in this case on November 19, 2012, this action was referred to former United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation ("PF&R"). Following Magistrate Judge Stanley's retirement, this action was referred on April 8, 2013, to United States Magistrate Judge Dwane L. Tinsley. Magistrate Judge Tinsley filed his PF&R [ECF 13] on January 23, 2014, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket.

Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made. The Court is not required to review, under a de novo or any other standard, the factual

or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F .2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Plaintiff filed timely objections to the PF&R on February 10, 2014. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections.

## I. PROCEDURAL BACKGROUND

The facts concerning this matter are more fully set forth in the PF&R. In short, Plaintiff filed applications for disability insurance benefits ("DIB"), alleging disability beginning April 25, 2008. (ECF 8–5 at 2.) Plaintiff alleged disability due to back and shoulder problems, arthritis, nerve damage in his lower back, hypertension, and diabetes. (ECF 8–6 at 16.) His applications were denied initially and upon reconsideration. (ECF 8–4 at 5, 11.)

On December 2, 2011, a hearing was held before Administrative Law Judge H.J. Barkley III. On December 20, 2011, ALJ Barkley issued an unfavorable written decision for Plaintiff. (ECF 8–2 at 20–61.) Following Plaintiff's administrative appeal, by written notice dated September 28, 2012, the Social Security Administration's Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's request for review. (*Id.*, at 2–5.) Thereafter, on November 16, 2012, Plaintiff filed his Complaint in this Court. (ECF 1.)

## II. PLAINTIFF'S OBJECTIONS

Plaintiff makes two specific objections to the PF&R. (ECF 14.) First, he alleges that the magistrate judge erred in finding that the ALJ properly weighed Plaintiff's subjective complaints of pain. Second, Plaintiff argues that the magistrate judge erred because he did not address an issue raised by Plaintiff concerning the ALJ's residual functional capacity assessment ("RFC").

The Commissioner did not file a response to Plaintiff's objections. This matter is now ripe for review.

## III. STANDARD OF REVIEW

The Court has a narrow role in reviewing claims brought under the Social Security Act. This Court is authorized to review the Commissioner's denial of benefits, as set forth by his designee, the ALJ, under 42 U.S.C. §§ 405(g) and 1383(c)(3). Its review is limited to determining whether the contested factual findings of the Commissioner are supported by substantial evidence and were reached through application of correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

If substantial evidence exists, the Commissioner's final decision must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or

substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays*, 907 F.2d at 1456). Assuming error by the Commissioner, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached by the ALJ. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ("While the general rule is that 'an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained,' reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached. . . .'") (citations omitted).

### IV. DISCUSSION

#### A. *Plaintiff's First Objection*

Plaintiff's first objection is that the magistrate judge failed to understand one of Plaintiff's assertions of error. Plaintiff claims that the magistrate judge failed to understand that Plaintiff's assertion of error was that the ALJ failed to properly evaluate the second prong of the two-step pain test under the pertinent federal regulations and Fourth Circuit law. More particularly, Plaintiff states that the ALJ simply rejected Plaintiff's statements about his pain and did not properly consider mandatory factors under the regulations, namely: Plaintiff's activities of daily living; evidence regarding the location, duration, and frequency of pain; precipitating and aggravating factors; type, dosage, and effect of medication; treatment and measures to relieve pain. *See* 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2011). Plaintiff faults the magistrate judge for only focusing on whether the ALJ properly determined that Plaintiff's impairment could reasonably produce the intensity, persistence, and limiting effects of the symptoms alleged.

The Court rejects Plaintiff's contention. In his brief in support of judgment on the

4

pleadings, Plaintiff identifies three issues. The second issue, which concerns this particular objection, reads as follows: "The ALJ erred in finding that the claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible." (ECF 9 at 2.) In support of this argument, Plaintiff then recounts various items of medical evidence in the record to counter the ALJ's adverse credibility assessment. (*Id.* at 5–6.)

Notably, the very specific argument that Plaintiff now makes in his objections to the PF&R—that is, that the ALJ simply rejected Plaintiff's statements about his of pain and did not properly consider factors under the regulations—appears nowhere in his argument in his brief in support of judgment on the pleadings or in his reply to the Commissioner's response to Plaintiff's brief. Plaintiff's arguments in the briefing before the magistrate judge simply marshaled favorable medical evidence in the record to support Plaintiff's argument that the ALJ's credibility finding was erroneous. There is no criticism of the ALJ for failing to consider certain factors under the regulations. Thus, Plaintiff's assertion of error by the magistrate judge is unfounded.

In any event, the substance of the objection lacks merit. A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. § § 404.1529(b) and 416.929(b) (2011); SSR 96–7p; *see also, Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). If a medical impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. *Id*. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not

5

be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2011). Additionally, the Social Security regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2011).

> Similarly, Social Security Ruling 96–7p ("SSR 96–7p" ) provides:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96–7p, 1996 WL 374186 (S.S.A. July 2, 1996).

SSR 96–7p requires an ALJ to consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. The regulation also requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis, i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Fourth Circuit case law and SSR 96–7p provide that, although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ may not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. *Craig*, 76 F.3d at 585, 594; SSR 96–7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. *Id.* at 595. Nevertheless, under *Craig* an ALJ may nonetheless consider the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which *Craig* prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence. Moreover, pain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Craig*, 76 F.3d at 592 (citations omitted). Also, a claimant's complaints of pain may be undermined by his or her ability to perform a wide variety of daily activities. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.").

Here, the ALJ, when evaluating the intensity and persistence of Plaintiff's pain and symptoms and the extent to which they affected Plaintiff's ability to work, did not fail to consider all the pertinent factors under Fourth Circuit law and the Social Security regulations. The ALJ began his discussion with citation of the correct regulatory legal standards, including 20 C.F.R. § 404.1529 and SSR 96–7p. (ECF 8–2 at 25.) The ALJ stated that he had "considered all

symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" based on these regulations when making his findings. (*Id.*) He then explained the two-step analysis he must undertake. The ALJ stated:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

(ECF 8–2 at 25.)

After reciting the two-step analytical framework, the ALJ then examined Plaintiff's various statements he made concerning his past medical history and claims of injuries and pain. (*Id.* at 25.) These are statements that appear in the medical record as well in Plaintiff's testimony at the December 2, 2011, administrative hearing. (*Id.*)

Thereafter, the ALJ conducted the requisite two-step analysis. First, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms. . . ." (*Id.*) Plaintiff does not contest this finding. As for the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity

9

assessment." (*Id.*) It is this second finding that Plaintiff contests.

After making his second finding, the ALJ proceeded to support that finding with an extensive review of the record. He began his discussion stating that the "objective evidence does not support the extreme limitations alleged and reveal[s] the claimant is not fully credible." (*Id.*) The ALJ noted that Plaintiff has not received the type of medical care one would expect for a totally disabled individual, and that the treatment he has received has been "routine and/or conservative." (*Id.*) The ALJ also noted that in 1994, after sustaining a lumbar fracture, Plaintiff underwent surgery and extensive rehabilitative therapy to improve his range of motion and mobility. (*Id.*) The ALJ noted that Plaintiff testified at the administrative hearing that after extensive therapy he was able to resume work in the insurance industry, but he also testified that after the passage of time the pain had worsened and prevented him from working. (*Id.*, at 26.) The ALJ noted that the medical records from 2007 through 2008 from Plaintiff's general practitioner indicated that Plaintiff "consistently reported 'normal activity and energy level' and neurological examinations were normal." (*Id.*) The ALJ also noted that although Plaintiff's general practitioner prescribed medication for Plaintiff's back pain in July 2008, and that there was evidence of "bilateral paraspinal muscle tenderness and moderately reduced flexion", but no changes were made to Plaintiff's treatment regime. (*Id.*) The ALJ further noted that in 2009 Plaintiff reported shoulder pain which caused Plaintiff "trouble with golfing." (*Id.*) X-rays of Plaintiff's shoulders revealed "mild arthritic changes" and no evidence of fracture, calcification, or destructive process. (*Id.*) The ALJ noted that physical therapy was recommended for "bilateral impingement syndrome" of the shoulders. (*Id.*) Because Plaintiff could not afford physical

therapy, he underwent Cortisone injections, which effectively controlled his shoulder symptoms. (*Id.*)

The ALJ also reviewed the independent consultative examination conducted by Sushil M. Sethi, M.D. in June 2010. Dr. Sethi's report contained the results of her physical examination of Plaintiff, as well as Plaintiff's statements of his medical problems and history. Dr. Sethi noted that Plaintiff was in no "acute distress." The ALJ recited Dr. Sethi's findings in detail. (*Id.* at 27.) The ALJ further discussed Plaintiff's medical care in 2010 and 2011. This discussion noted that Plaintiff continued to experience shoulder and lumbar problems, but Plaintiff had no neurological deficiencies and was treated with steroid injections, anti-inflammatory medications, and home exercises to improve his range of motion. (*Id.*) The ALJ also noted that Plaintiff sought treatment for acute disorders, shoulder pain, tenderness, and decreased range of motion throughout 2011, but that the medical records stated that Plaintiff "presented with a normal gait and station, no deformities, no muscle spasms, and good range of motion testing (Exhibit 9F)". (*Id.* at 28.) The ALJ stated that treatment notes in June 2011 stated that Plaintiff was trying to be more active physically and was playing golf. (*Id.*)

After a thorough review of the medical evidence, the ALJ discussed Plaintiff's description of his daily activities and the medical opinion evidence. (*Id.*)

Contrary to Plaintiff's assertion that the ALJ failed to consider factors under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), the ALJ's Decision explicitly reflects the ALJ's through consideration of the factors under those regulations. More specifically, the ALJ considered doctor's reports, Plaintiff's prior work record, his activities of daily living, evidence concerning the location, duration, and frequency of pain, his subjective statements of pain that were contained

in medical records and his testimony at the administrative hearing, and evidence of Plaintiff's treatment, medications, and pain relief measures.

Plaintiff's statement that the ALJ mentioned none of Plaintiff's testimony when the ALJ made his credibility determination is simply untrue. In fact, the ALJ expressly referenced Plaintiff's testimony regarding how he was able to return to work after his 1994 injury, but that Plaintiff testified that with age and time the residual pain and problems had worsened and prevented him from working. (See ECF 8–2 at 26, first full paragraph.) The ALJ then directs the reader to Plaintiff's "hearing testimony." (*Id.*)

In light of the foregoing, Plaintiff's objection is meritless.

### B. *Plaintiff's Second Objection*

Plaintiff's second objection is that the magistrate judge failed to address his argument that the ALJ erred by not including in his RFC any restrictions accounting for Plaintiff's bilateral shoulder impingement. (ECF 14 at 5.) Plaintiff asserts that the magistrate judge "miscast" Plaintiff's argument when he stated "Claimant asserts that the ALJ failed to find Claimant's bilateral shoulder impingement to constitute a severe impairment." (*See* PF&R at 18.) While this isolated statement in the PF&R does not fully characterize Plaintiff's argument, the magistrate judge's analysis as a whole does.

The magistrate judge reviewed the ALJ's findings and pertinent medical evidence. The PF&R states that the ALJ found that Plaintiff's shoulder problem failed to meet or equal the criteria in the pertinent regulations, namely, 20 C.F.R., Part 404, Subpart P, Appendix 1. The PF&R also noted that the ALJ expressly stated Plaintiff's RFC was supported by the medical opinion evidence and the evidence from Plaintiff's treating physician. (ECF 13 at 19.) The

12

PF&R also summarized the testimony at the administrative hearing of the vocational expert ("VE"). Thus, it is apparent that the magistrate judge did not misapprehend Plaintiff's argument.

Moreover, the substance of Plaintiff's argument has no merit. In conducting the five-step sequential evaluation, the ALJ, at step one, found that Plaintiff had not engaged in substantial gainful activity and, at step two, found that Plaintiff's bilateral shoulder impingement was, along with several other impairments, a severe impairment within the meaning of the regulations. (ECF 8–2 at 22.) At step three, the ALJ found that Plaintiff's shoulder impingement did not meet the severity criteria set forth in the listing of impairments under the regulations. (*Id.*) Plaintiff does not object to these findings.

In connection with the analysis at step four of the sequential evaluation, the ALJ conducted the RFC. It is this step of the ALJ's analysis at which Plaintiff's objection takes aim. More specifically, Plaintiff argues that after the ALJ recognized the shoulder problem was a severe impairment, the ALJ was "obligated to address the manner in which that impairment affected the [RFC]," and he was "required to perform a 'function–by–function' assessment in determining a claimant's RFC." (ECF 14 at 5–6.) Plaintiff claims that the "restrictions the ALJ includes in his controlling hypothetical question to the VE and in his RFC should match the rationale he includes in his decision." (*Id.* at 6.)

Plaintiff's essential quarrel with the ALJ is that the ALJ's RFC assessment included the determination that Plaintiff had the capacity to lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally. (*Id.*) Plaintiff argues that the opinions of Jason Barton, M.D., Plaintiff's general practitioner, and Gary W. Miller, M.D., Plaintiff's orthopedist, did not support

13

these assessments. Plaintiff also faults the ALJ for failing to include any restrictions to address limitations in Plaintiff's ability to reach. (*Id.*)

Plaintiff only cites two items of evidence in the record in support of these claims: (1) a June 17, 2010, medical note by Dr. Barton that Plaintiff had "a decreased range of motion, an increase in pain, and a positive arm drop test. . . ."; and (2) "[a]n MRI of the plaintiff's left shoulder on July 17, 2010, revealed a torn rotator cuff and degenerative changes of the AC joint." (*Id.*) Because the ALJ had found Plaintiff's shoulder impingement was a severe impairment under the regulations, Plaintiff asserts that the hypothetical question to the VE should have contained restrictions from that impairment, including restrictions concerning Plaintiff's reaching ability.

A hypothetical question posed to a VE must precisely set out the claimant's individual physical and mental impairments. *Walker v. Bowen*, 876 F.2d 1097, 1100 (4th Cir. 1989). The ALJ, however, need only include in his questioning those impairments which he has found to be credible. *See, e.g., Johnson v. Astrue*, No. 5:08–CV–00515–FL, 2009 WL 3648551, at *12 (E.D.N.C. Nov. 3, 2009) (citation omitted). If an ALJ does not believe that the claimant suffers from an alleged impairment—and if substantial evidence supports such a conclusion—then the ALJ is not required to include that impairment in questioning the VE. *Id*.

Substantial evidence supports the hypothetical questions posed by the ALJ to the VE. The ALJ noted in his Decision that Plaintiff sought treatment with Dr. Barton for worsening shoulder pain and decreased range of motion and that the physical examination showed that Plaintiff had decreased left shoulder abduction and a positive arm drop test. (ECF 8–2 at 27.) The ALJ also noted, correctly, that Dr. Barton's physical examination evidenced no neurological deficiencies, no tenderness to palpitation, no pain, normal strength and tone, normal spine movements, normal

14

sensation. (*Id.*) As he had in the past, Dr. Barton gave Plaintiff another steroid injection in his left shoulder, which relieved some of Plaintiff's symptoms, and referred Plaintiff to an orthopedist. (*Id.*) Dr. Miller, the orthopedist, examined Plaintiff in June and July 2010. In his Decision, the ALJ fairly noted Dr. Miller's clinical findings, which included a negative arm drop test. Dr. Miller stated that the X-ray results were normal for a person of Plaintiff's age. (ECF 8–8 at 69.) Dr. Miller noted that the results of the MRI of Plaintiff's shoulder showed a "small tear at the insertion of the supraspinatus tendon, mild subdeltoid bursitis. Tendonitis [of] the area of the shoulder, mild arthritic type changes [of] the AC joint but no significant arthritic type change [of] the glenohumeral joint." (*Id.* at 68.) Dr. Miller prescribed a conservative treatment plan that consisted of non-steroidal, anti-inflammatory drugs and range of motion exercises, followed by, if needed, additional steroid injections and possible surgical intervention. (*Id.*) The ALJ noted that there was no evidence that Plaintiff ever followed-up with Dr. Miller, but that he did obtain additional steroid injections with Dr. Barton. The ALJ also noted that the medical evidence showed that the steroid injections alleviated Plaintiff's symptoms. The ALJ also noted that the treatment records failed to corroborate evidence of "significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (*Id.* at 28.) The ALJ specifically referenced several items of evidence in support of this proposition, including medical record notes in 2011 that Plaintiff was golfing and trying to be more active, that Plaintiff was in no acute distress and presented with normal gait, station, and coordination, that his arthritis was "stable", and that Plaintiff suffered from no joint swelling. (*Id.*)

All of the ALJ's hypothetical questions to the VE, Casey Bass, accounted for all of Plaintiff's credible impairments. The hypothetical questions assumed an individual of Plaintiff's

age, education, and employment history. (ECF 8–2 at 56.) The ALJ stated that the assumed hypothetical individual

> is limited to light work[1], that he could lift 20 pounds occasionally, 10 pounds frequently, carry 40 pounds occasionally, 10 pounds frequently, was able to sit two hours out of an eight hour work day, stand or walk for six hours out of an eight hour day, and he is able to sit and stand at will as long as he is not off task more than 10 percent of the time. He may push and pull as much as he can lift and carry, he may—he is limited to occasionally climbing ramps and stairs, ladders or scaffolds, he may [inaudible] stoop, kneel, crouch, and crawl. He may never be exposed to hazards such as unprotected heights and moving machinery. He may only have occasional exposure to extreme heat, cold and vibrations.

(*Id.* at 57.)

Mr. Bass testified that based on the criteria stated in the hypotheticals, Plaintiff would be able to perform his past work as an insurance agent, contracts specialist, and regional insurance sales manager. (ECF 8–2 at 56.) These restrictions were supported by substantial evidence in the record, particularly by the opinion evidence of Marcel Lambrechts, M.D. and Uma Reedy, M.D.[2] To the extent that Plaintiff disagrees with the ALJ's findings, he is essentially asking this

---

1  Pursuant to 20 C.F.R. § 404.1567, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

2  Drs. Lambrechts and Reedy each completed physical residual capacity assessments of Plaintiff. Both physicians opined that Plaintiff had a *greater* capacity to lift and carry than the assessment the ALJ actually used. The ALJ, while giving these physicians' opinions "some

Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, all inappropriate and prohibited tasks for this Court.

## V.  CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Plaintiff's objections [ECF 14], **ADOPTS** the PF&R to the extent it is consistent with this opinion [ECF 13], **DISMISSES** Plaintiff's Complaint [ECF 1], and **DIRECTS** the Clerk to remove this case from the Court's Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 28, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

weight", generously elected to use less demanding physical capacity criteria in his making his RFC assessment.  (ECF 8–2 at 29.)

17